CURRY ADVISORS
A Professional Law Corporation
  K. Todd Curry (149360)
185 West F Street, Ste. 100
San Diego, California 92101
Telephone: (619) 238-0004
Fax Number: (619) 238-0006

Counsel for Defendant
Wolfe Legal Group, PC

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>CUKER INTERACTIVE, LLC,<br><br>Debtor.<br><br>Bankruptcy Case No. 18-07363-LA11<br><br>CUKER INTERACTIVE, LLC,<br><br>Plaintiff,<br>v.<br><br>WOLFE LEGAL GROUP, PC,<br><br>Defendant. | ADVERSARY NO. 21-90002-LA<br><br>DECLARATION OF K. TODD CURRY IN OPPOSITION TO MOTION BY ADEL ATALLA FOR ORDER THAT PROPOSED DISCOVERY IS NOT AUTHORIZED OR TERMINATING OR LIMITING DEPOSITION<br><br>Date:  April 21, 2022<br>Time:  2:00 p.m.
Dept:  Two
Honorable Louise DeCarl Adler |

/ / /

/ / /

/ / /

I, K. Todd Curry, declare as follows:

1. I am an attorney at law, duly licensed to practice before this Court and all courts of the State of California, and I am a principal of Curry Advisors, A Professional Law Corporation, which is counsel for defendant Wolfe Legal Group, PC ("WLG"). I have personal knowledge of the facts set forth in this declaration and, if called and sworn as a witness, I would be competent to testify to such facts.

2. Attached as Exhibit 1 is a true and correct copy of my written response to the meet and confer from Mr. Vanderhoff.

3. Adel Atalla ("Atalla") has claimed that WLG did not represent him personally.

4. Atalla contends that WLG should not have performed certain work, which may include services such as attending a deposition of Paul Karch and preparing a settlement conference statement, because other counsel allegedly was hired on a contingency basis to do the defense work that WLG was performing in the Arkansas litigation.

5. Atalla has admitted that he knew ahead of time that WLG was going to attend the Paul Karch deposition.

6. Atalla contends that he/Cuker never engaged WLG to do anything but prosecute legal malpractice claims, and that WLG was not engaged to defend claims in the Arkansas litigation.

7. True and correct pages from the subject deposition are attached as Exhibit 2.

8. WLG incurred $6,277.50 (13.5 hours x $465 per hr.) in connection with this discovery dispute, which includes 2.3 hours of time to meet and confer. In addition, WLG will incur a court reporter appearance set up fee of at least $500 when the deposition is reconvened.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on the 4th day of March 2022.

/s/ K. Todd Curry
_____
K. Todd Curry

-1-

# EXHIBIT 1

# K. Todd Curry

| | |
|---|---|
| **From:** | K. Todd Curry <tcurry@currylegal.com> |
| **Sent:** | Friday, February 18, 2022 10:32 AM |
| **To:** | Michael D. Breslauer (mbreslauer@swsslaw.com); alan.vanderhoff@vanderhofflaw.com |
| **Subject:** | Cuker v. WLG meet and confer |

Dear Messrs. Breslauer and Vanderhoff,

I have done my best to get at least a preliminary response to the meet and confer letter that was sent at the close of business on February 14, which was 11 days after the bankruptcy court status conference. I believe that Mr. Breslauer informed the bankruptcy court on February 3 (over my objections) that tight deadlines for addressing open discovery issues were appropriate because the meet and confer would happen very shortly, early in the week of February 7. In fact, the transcripts of the Atalla deposition were provided on February 7 and early morning of February 8, so it is very disturbing that it took one whole week after that for you send the meet and confer letter after having told Judge Adler that the meet and confer would happen very quickly. As I have told you, I have (and had) multiple hearings and filing deadlines this week, including a filing late last night and another hearing this morning which will be at 11:30. I had to inform the client that one of our filings would need to be deferred so that I could give some attention to this meet and confer this morning. In short, the meet and confer came late and failed to respect both the amount of time allowed under the local rules to respond to it and the bankruptcy court's deadlines imposed upon Mr. Breslauer's urging.

I have reviewed the list you provided regarding instructions not to answer. You omitted at least one, at page 194, line 7 (Vol II) and following:

```
7     So I'm not withdrawing my question.  This is a
8     follow-up question to what Mr. Atalla himself said.  And
9     he said that he didn't understand he was going to be
10    represented personally in this.  My follow-up was
11    simply:  When you wrote this question -- when you wrote
12    this e-mail, did you understand -- your understanding
13    was that you were not going to be represented
14    personally?
```

This was a follow-up to (and was different from) the question that was answered at page 190 (or elsewhere). (Due to the press of time, there may be other questions not answered, and this email does not constitute a waiver of rights as to those.) All of the listed questions, and the omitted question, need to be answered, and they were not answered (except the one at page 190 where the witness answered before the objection was stated). There also likely would have been follow-up questions to the questions not answered, and even to the one answered (after which there were further objections.) Your meet and confer is, unfortunately, severely deficient in that it did not discuss the standard for an instruction not to answer a deposition question. I am not sure why. However, Rule 30 is very clear: An instruction not to answer *in a deposition* is proper only when protecting a privilege or as a prelude to adjourning the deposition to stop a bad faith or harassing deposition. See FRCP 30(c)(2), (d)(3). These objections were never raised, nor would they apply here, so it is clear that the instructions not to answer were given to obstruct the deposition.

The latest purported objection, that questions were asked that were not within the scope of the Rule 30(b)(6) deposition notice, is not a proper objection. There is no prohibition on asking questions outside the scope of the deposition notice. You cited no authority to support your position that the notice limits the scope of the deposition. In fact, the notice simply helps the entity designate the proper person(s) to testify for the entity.

1

Aside from all of the foregoing, all of the questions were within the scope of the deposition notice and the adversary proceeding (although that is not the test for a proper deposition question), because, among other things, they were designed to explore the extent to which Cuker will attempt to continue its practice of attempting to distinguish between services performed for it and services performed for Mr. Atalla. My client has the right to know whether, when, and to what extent Cuker can and will attempt to make that distinction, and whether in fact such a distinction ever was made when Mr. Atalla communicated to WLG. Whether the questions and answers ultimately would be admissible into evidence in the bankruptcy litigation is not the issue.

One possible remedy for your having improperly obstructed the deposition is to resume the deposition, with Cuker paying the court reporter cost and $1,000 (which is discounted) for my time spent meeting and conferring. Please let me know if that is acceptable. Thank you.

K. Todd Curry, Esq.
CURRY ADVISORS
A Professional Law Corporation
185 West F Street, Ste. 100
San Diego, CA 92101
T  619.238.0004
F  619.238.0006
Broker CA DRE # 01926449

-----------------------------------------------------------------------------------------------------

NOTICE:  This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.
Thank you.

2

# EXHIBIT 2

```
 1              MR. BRESLAUER:  I'll object and instruct the
 2   witness not to answer.  It's outside the scope of the
 3   lawsuit or any possible relevance to anything in the
 4   lawsuit.  This isn't -- it's not about your claims against
 5   Mr. Atalla individually so you'll have to take that up
 6   with Mr. Vanderhoff separately.
 7              MR. CURRY:  No, this has more to do with --
 8   because we're dealing with the same person, right, he is
 9   the representative of Cuker and then he is also a
10   defendant and my client says my client provided legal
11   services for him personally as well and, you know, you've
12   seen the exhibits, there's conflict waivers and such for
13   that very purpose.  So I'm not trying to explore the other
14   lawsuit.
15   BY MR. CURRY:
16        Q.   My question, though, is did there ever come a
17   time where Mr. Atalla told the Wolfe Legal Group to not
18   perform services for him personally because they were
19   outside the scope of what Wolfe Legal Group was supposed
20   to do?
21              MR. BRESLAUER:  Same objection, same
22   instruction.
23   BY MR. CURRY:
24        Q.   Okay.  So Mr. Atalla are you going to refuse to
25   answer that question?
```

```
1      A.   I will have to follow my legal counsel's advice.
2           MR. CURRY:  All right.  And I'll just state one
3   last time as an effort to meet and confer, understanding
4   that because the communications are coming from the same
5   person on behalf of Cuker and on behalf of the individual,
6   to me it seems like a fair question in order to close the
7   loop on what could be an ambiguous communication.
8           So I'm probably going to have to go to the court
9   and get some help on this question.
10          MR. BRESLAUER:  I understand that, Todd, and you
11  might -- in the event -- in light of Cuker's Chapter 11
12  case and the existence of the automatic stay, the question
13  is fraught with implications both pre- and post-petition
14  for services with Cuker, but given your client's lawsuits
15  against Mr. Atalla and against Mr. Cuker individually, I
16  really am highly sensitive to this proceeding being used
17  in connection with any discovery that's related to
18  Mr. Atalla's exposure or any supposed liability he might
19  have to Wolfe Legal Group.  So I want to be really, really
20  sensitive to that and I'm asking you to respect that.
21          MR. CURRY:  Well, I didn't realize you were
22  representing him personally, but --
23          MR. BRESLAUER:  No, I'm not.
24          MR. CURRY:  Well, that's the objection that --
25          MR. VANDERHOFF:  Todd, let me weigh in then.
```