**CSD 1500** (07/01/18)

Name, Address, Telephone No. & I.D. No.
CURRY ADVISORS
A Professional Law Corporation
K. Todd Curry (149360)
185 West F Street, Ste. 100
San Diego, CA 92101
T: (619) 238-0004 | F: (619) 238-0006
Counsel for Defendant and Counterclaimant Wolfe Legal Group, PC

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West F Street, San Diego, California 92101-6991

In Re
CUKER INTERACTIVE, LLC

Debtor.

BANKRUPTCY NO. 18-07363-LA11

CUKER INTERACTIVE, LLC

☑ Plaintiff(s) (Adv)
☐ Movant(s) (RS)

ADVERSARY NO. 21-90002-LA
RS NO.

v.

WOLFE LEGAL GROUP, PC

☑ Defendant(s) (Adv)
☐ Respondents(s)(RS)

Date of Hearing: May 12, 2022
Time of Hearing: 2:30 p.m.
Name of Judge: Hon. Louise DeCarl Adler

# NOTICE OF LODGMENT

**TO: All Parties in Interest**

**PLEASE TAKE NOTICE that:**

**On** May 27, 2022, the undersigned party lodged with the court a proposed Order on Cross Motions For Summary Judgment, a copy of which is attached as Exhibit A and incorporated by reference.

Under Rule 7054-3(b) of the Local Bankruptcy Rules of this court, any objections to the form or content of this proposed Order on Cross Motions For Summary Judgment must be filed and served on the undersigned party within 7 days from the date of service of this Notice of Lodgment.

DATED: May 27, 2022

/s/ K. Todd Curry
☐ Party ☑ Attorney for Movant

# CERTIFICATE OF SERVICE

I, K. Todd Curry am a resident of the State of California, over the age of 18 years, and not a party to this action.

On May 27, 2022, I served the Notice of Lodgment:

1. **To Be Served by the Court via Notice of Electronic Filing ("NEF")**:

Under controlling Local Bankruptcy Rules(s) ("LBR"), the document(s) listed above will be served by the court via NEF and hyperlink to the document. On May 27, 2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the e-mail address(es) indicated and/or as checked below:
Michael D. Breslauer on behalf of Plaintiffs Cuker Interactive, LLC: mbreslauer@swsslaw.com, wyones@swsslaw.com; Alan Vanderhoff on behalf of Interested Party Adel Atalla: alan.vanderhoff@vanderhofflaw.com, alanvanderhoff@cox.net

☐ Chapter 7 Trustee:

☐ For Chpt. 7, 11, & 12 cases:
UNITED STATES TRUSTEE
ustp.region15@usdoj.gov

☐ For ODD numbered Chapter 13 cases:
THOMAS H. BILLINGSLEA, JR., TRUSTEE
Billingslea@thb.coxatwork.com

☐ For EVEN numbered Chapter 13 cases:
DAVID L. SKELTON, TRUSTEE
admin@ch13.sdcoxmail.com
dskelton13@ecf.epiqsystems.com

2. **Served by United States Mail**:

On ____________________,I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing accurate copies in a sealed envelope in the United States Mail via 1) first class, postage prepaid or 2) certified mail with receipt number, addressed as follows:

3. **Served by Personal Delivery, Facsimile Transmission, Overnight Delivery, or Electronic Mail**:

Under Fed.R.Civ.P.5 and controlling LBR, on ____________________ , I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission, overnight delivery, and/or electronic mail as follows:

I declare under penalty of perjury under the laws of the United States of America that the statements made in this proof of service are true and correct.

Executed on 5/27/2022
(Date)

/s/ K. Todd Curry
(Typed Name and Signature)

185 West F Street, Ste. 100
(Address)

San Diego, CA 92101
(City, State, ZIP Code)

# EXHIBIT "A"

**CSD 3000C** [07/01/18]

Name, Address, Telephone No. & I.D. No.
CURRY ADVISORS
A Professional Law Corporation
K. Todd Curry (149360)
185 West F Street, Ste. 100
San Diego, CA 92101
T: (619) 238-0004 | F: (619) 238-0006
Counsel for Defendant and Counterclaimant Wolfe Legal Group, PC

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West F Street, San Diego, California 92101-6991

| | |
|---|---|
| In Re<br>CUKER INTERACTIVE, LLC<br>Debtor. | **LODGED**<br>BANKRUPTCY NO. 18-07363-LA11 |
| CUKER INTERACTIVE, LLC<br>Plaintiff(s) | ADVERSARY NO. 21-90002-LA |
| v.<br>WOLFE LEGAL GROUP, PC<br>Defendant(s) | Date of Hearing: May 12, 2022<br>Time of Hearing: 2:30 p.m.<br>Name of Judge: Hon. Louise DeCarl Adler |

**ORDER ON**
CROSS MOTIONS FOR SUMMARY JUDGMENT

The court orders as set forth on the continuation pages attached and numbered 2 through 3 with exhibits, if any, for a total of 12 pages. Notice of Lodgment Docket Entry No. 104 .

//

//

//

//

DATED:

_______________________________
Judge, United States Bankruptcy Court

Case 21-90002-LA Filed 05/27/22 Entered 05/27/22 16:49:35 Doc 104 Pg. 6 of 16

**CSD 3000C** [07/01/18] **(Page 2)**
***ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT***
DEBTORS: ALLIE'S PARTY EQUIPMENT RENTAL, INC. CASE NO: 18-07363-LA11
ADV. NO.: 21-90002-LA

Cuker Interactive, LLC's Motion for Summary Judgment, or in the Alternative, Summary Adjudication [Docket No. 80] (the "Cuker Motion"), and the Motion by Defendant and Counterclaimant Wolfe Legal Group, PC for Partial Summary Judgment [Docket No. 65] (the "WLG Motion"), came on for hearing on May 12, 2022, at 2:30 p.m., in Department Two of the above-entitled Court, the Honorable Louise DeCarl Adler, United States Bankruptcy Judge, presiding. Plaintiff and Counter-Defendant Cuker Interactive, LLC ("Cuker") appeared by Solomon Ward Seidenwurm & Smith, LLP by Michael D. Breslauer; Defendant and Counterclaimant Wolfe Legal Group, PC ("WLG") appeared by Curry Advisors, A Professional Law Corporation by K. Todd Curry.

The Court having considered the Cuker Motion and the WLG Motion, and the papers filed in support thereof and in opposition thereto; the Court having issued a Tentative Ruling on May 9, 2022 [Docket No. 101], a copy of which is attached hereto; the parties having submitted on the Tentative Ruling without additional argument; notice appearing proper; and good cause appearing therefor;

IT IS HEREBY ORDERED AS FOLLOWS:

1. The Court adopts and grants the relief specified in the attached Tentative Ruling, which shall constitute the Court's findings of fact and conclusions of law in accordance with F.R. Bankr. P. 7052 and F.R. Civ. P. 52.

2. WLG shall be entitled to partial summary judgment as to the First Claim for Relief set forth in the First Amended Complaint (based on WLG's Sixteenth Affirmative Defense for recoupment) and as to its Counterclaim for annulment of the automatic stay. The Cuker Motion is denied as to the First Claim for Relief.

3. The Court having granted partial summary judgment for WLG as to the First Claim for Relief, the Second Claim for Relief is moot and shall be and hereby is dismissed with prejudice. The Cuker Motion is denied as to the Second Claim for Relief.

4. The Cuker Motion is granted in part as to the Third Claim for Relief—*i.e.*, its claim objection as to WLG's Third Amended Proof of Claim (Claim No. 5-4). Specifically, Cuker shall be entitled to partial summary judgment as to its objection to WLG's claim for payment for the December 14, 2018 deposition of Mark Henry in the amount of $4,823.15. The Cuker Motion otherwise is denied as to the Third Claim for Relief.

5. Except with respect to the $4,823.15 for the Mark Henry deposition (which is addressed above), Cuker withdraws and dismisses its Third Claim for Relief as to any

Case 21-90002-LA Filed 05/27/22 Entered 05/27/22 16:49:35 Doc 104 Pg. 7 of 16

**CSD 3000C** [07/01/18] **(Page 3)**
***ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT***
DEBTORS: ALLIE'S PARTY EQUIPMENT RENTAL, INC. CASE NO: 18-07363-LA11
ADV. NO.: 21-90002-LA

remaining issues in the Third Claim for Relief not addressed by the Cuker Motion. Therefore, WLG's Claim No. 5-4 shall be allowed in the amount of $12,496.53, which consists of principal in the amount of $7,145.58 ($11,968.73 - $4,823.15), plus interest on such sum from December 13, 2018 through May 31, 2022 at the rate of 21.6% per annum totaling $5,350.95 ($4.23 per day x 1265 days).

6. With respect to the net retainer balance of $5,073.57 ($17,570.10 – $12,496.53), WLG shall return such sum to Cuker forthwith, subject, however, to such costs, if any, as WLG may be allowed pursuant to a timely filed Bill of Costs.

7. To the extent either party claims costs as a prevailing party in accordance with F.R. Bankr. P. 7054(b), a Bill of Costs must be filed within 14 days of entry of Judgment in accordance with S.D. Cal. Dist. Ct. R. 54.1(a).

TENTATIVE RULING

ISSUED BY JUDGE LOUISE DECARL ADLER

Adversary Case Name: CUKER INTERACTIVE, LLC v. WOLFE LEGAL GROUP, PC

Adversary Number: 21-90002

Case Number: 18-07363-LA11

Hearing: 02:30 PM Thursday, May 12, 2022

Motion: 1) PLAINTIFF'S AND COUNTER-DEFENDANT CUKER INTERACTIVE, LLC MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION. FILED BY MICHAEL D. BRESLAUER ON BEHALF OF CUKER INTERACTIVE, LLC.

Debtor seeks summary judgment on the First, Second and Third Claims in its First Amended Complaint for: (1) Violation of automatic stay voiding WLG's postpetition withdrawal of $60,671.08 of the Debtor's funds held in WLG's client trust account to pay WLG's prepetition fee/costs reflected on the December 2018 invoice [Claim 1]; (2) Contingent objection to WLG's (un-filed) claim for $60,671.08 if the $60,671.08 transfer is voided [Claim 2]; (3) Objection to amended proof of claim No. 5-3 seeking additional prepetition fees/costs/interest totaling $17,570.10 [Claim 3].The motion is ***GRANTED*** in part, and ***DENIED*** in part, as follows:

I. First Claim for Relief – Violation of Automatic Stay/Void Transfer: The Debtor's motion is **denied**; and summary judgment on this claim is **granted in favor of WLG** for the reasons more fully set forth in this Court ruling on WLG's concurrently-filed cross motion for summary judgment.

II. Second Claim for Relief – Contingent Claim Objection: The contingent objection to WLG's (unfiled) claim is **premature**, and it is **mooted** by granting summary judgment on the First Claim in favor WLG.

III. Third Claim for Relief – Objection to Amended POC 5-3: **Granted in part**; and **denied in part** as follows:

(A) 12/14/2018 Deposition: Per this Court's prior order, the Court disallowed *all* of WLG's fees/costs incurred *postpetition* and directed that WLG may file an amended proof claim (*i.e.*, Amended POC 5-3) solely for its unpaid *prepetition* fees/cost. [Main Case ECF No. 508]. Accordingly, the Court disallows the fees for this 12/14 deposition for the services performed on 12/14 as they are clearly *postpetition*;

and it allows the fees for the services performed on 12/13 or earlier. The Court is not inclined to hold an evidentiary hearing solely to adjudicate the exact time each service was performed on 12/13. The bankruptcy was filed late in the afternoon of 12/13 and so the Court will treat the services as *prepetition*. Moreover, until the case was officially filed, Ms. Wolfe prudently needed to prepare to proceed (including travel and deposition preparation) because the discovery cut-off date was 12/14 and she had no control if the Debtor filed or did not file, or when. The Court is hopeful that the parties can agree to the amount to allow/disallow.

W/r/t to the costs incurred for the 12/14 deposition, any bill or monies actually paid on or before 12/13 are *prepetition* and are allowed; however, if this cost was billed or paid thereafter, that portion is disallowed. The Court recognizes WLG's argument that it was too late to cancel the 12/14 deposition, so some portion of this cost was incurred prepetition (even if billed and paid postpetition). However, WLG has not provided a shred of evidence to support the non-refundable amount; and as WLG was also defending the guaranty claim against Adelle Atalla individually which was not automatically stayed, logically this deposition proceeded for Mr. Atalla's benefit who still faced the 12/14 discovery cut-off date. The Court is hopeful that the parties can agree to the timing of the billing/payment.

(B) Air Fare: The Court is inclined to overrule this objection and allow the additional cost for Ms. Wolfe to travel to the deposition in *first class*. First, Mr. Breslauer's personal opinion of the reasonable airfare cost for this route two years ago is arguably not a proper opinion and unreliable. Second, the past practices of WLG to fly first class for this client is relevant, as is the fact that this charge was billed to the Debtor in 2018 without a timely objection. The cost to litigate this factual issue is not economical; and as Ms. Wolfe had already purchased the ticket and was in-route before the petition was filed, the Court is inclined to allow the full amount.

(C) Contractual Interest: The Court has reviewed its tentative ruling granting the Debtor's motion to confirm its Fourth Amended Ch. 11 Plan of Reorganization [ECF No. 442], which the Court affirmed and augmented by a subsequent Memorandum Decision on the issue of the postpetition interest rate to be paid to general unsecured claims for unimpairment in a solvent-debtor case. [ECF No. 443, 449] In connection with confirmation, the issue of WLG's impairment and the function of the 1.8% (21.6% per annum) "service charge" in the Engagement Agreement was squarely before the Court. The Court examined the "service charge," and it ruled that it is "interest" so the "contractual interest rate" for unimpairment of WLG's allowed secured claim is "21%" (and for WLG's allowed unsecured, if any, it would be the federal judgment interest). [ECF No. 442, Pg. 4-6] The Court is not inclined to relitigate this interest rate issue, as it complicates the impairment analysis and it is contrary to public policy to penalize an attorney for exercising business judgment to voluntarily reduce its fees/charges for reasons including promoting client good will.

2) MOTION BY DEFENDANT AND COUNTERCLAIMANT WOLFE LEGAL GROUP, PC FOR PARTIAL SUMMARY JUDGMENT FILED BY K. TODD CURRY

The motion of defendant/counterclaimant, Wolf Law Group, PC ("WLG"), for partial summary judgment on the first claim for relief for violation of the automatic stay based on recoupment and/for summary judgment on its counterclaim for annulment of the automatic stay retroactive to petition date is ***GRANTED***.

WLG seeks partial summary judgment on the Debtor's first claim in the complaint for violation of the automatic stay based on *recoupment* and/or on its counterclaim for retroactive annulment of the automatic stay.

**1. FACTUAL SUMMARY:**

On or about 9/18/2028, Cuker Interactive, LLC ("Cuker" or "Debtor") executed an engagement agreement with WLG to represent it in prosecuting a potential malpractice/breach of fiduciary case against its former attorneys in connection with litigation already pending in the State of Arkansas ("Engagement Agreement"). [ECF No. 67, Ex. 1] In the Engagement Agreement, Cuker acknowledged that WLG is a small firm with three attorneys and limited resources, and the parties agreed *how* WLG's fees/costs would be paid. [*Id.* ¶¶ 2, 4] Specifically, the Engagement Agreement required Cuker to provide WLG with a (replenishable) $100,000 deposit of funds to be held in "trust" from which WLG would pay its fees/costs as they accrued; and it required WLG to return the unused portion of the trust funds to the Debtor after payment in full of WLG's fees/cost at the conclusion of its services in the case. [*Id.* ¶¶ 4-5, 10]

Consistent with the Engagement Agreement, the Debtor deposited funds to be held in WLG's client trust account which it replenished, and WLG used the trust funds to pay its fees and costs as they accrued for the months of September 2018, October 2018, November 2018, and part of December 2018 in the sums of $3,240, $14,425, $85,263.47, and $60,671.08, respectively. [ECF No. 67, Exs. 2, 3, 4, 5 (billing statements)] At that time, Cuker raised no objections to the costs or services, or the *amounts* billed in these invoices.

On the afternoon of December 13, 2018, at 3:42 p.m., Cuker filed its Chapter 11 bankruptcy case which imposed the automatic stay. WLG admits it was aware of the December 13 bankruptcy filing because: (i) it was warned early that morning that the Debtor would likely file bankruptcy that day; and (ii) the Debtor confirmed to WLG that it had indeed filed bankruptcy approximately thirty minutes after the case was filed.

Because of the anticipated bankruptcy filing, Ms. Wolfe who was the lead attorney handling Cuker's case, claims she directed the firm's bookkeeper, Ms. Rhea, to prepare the billing so that WLG could pay itself before the case was filed. Thereafter, on the morning of 12/13 Ms. Wolfe learned the filing would be that day, so she directed Ms.

Rhea to finish the monthly billing and transfer the funds immediately. Ms. Rhea confirms these facts.

The Court makes no finding as to whether the recollections of Ms. Wolfe and Ms. Rhea are entirely accurate. The documents appear to confirm that Ms. Rhea began the billing on 12/12; however, the Bank Statement for the firm's client trust account for December 2018 shows that the lump sum transfer actually occurred on 12/14/2018 which was one day postpetition. Moreover, the Bank's records, which the Debtor subpoenaed, show that the transfer was ***initiated*** on 12/14/2018 at 11:26 a.m. which conflicts with Ms. Rhea's adamant recollection that the transfer request was on 12/13/18. The Court makes no finding as to whether the recollections of Ms. Wolfe and Ms. Rhea are entirely accurate.

Both sides proclaim good faith and accuse the other side of hiding facts, lying and manipulating the record. Cuker claims WLG hid the actual transfer date which WLG likely knew about at least by January 2019, and that WLG ignored Mr. Breslauer's requests for the trust account bank statements first made in April 2019 (and perhaps tampered with the firm's accounting records) to obscure the facts. Mr. Curry, WLG's counsel, claims he did not move for annulment of the automatic stay to permit the draw down because he relied on Mr. Breslauer's statement that a one or two day delay in drawing down the fee account post-petition for the 12/13 billing would be "o.k.". These and other claims are factual findings that the Court cannot make on summary judgment. The Court observes that the claims and counter-claims between these counsel who ordinarily are courteous to each other is not their finest hour.

## II. STANDARD OF REVIEW FOR SUMMARY JUDGMENT:

Pursuant to Federal Rule Civil Procedure 56, made applicable to this action by Bankruptcy Rule 7056, summary judgment is appropriate only where [the evidence] shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). The party seeking summary judgment bears the initial burden of "informing the ... court of the basis for its motion and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. If the movant satisfies this burden, the nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505 (1986). In determining whether there is a genuine issue of material fact, courts must draw all reasonable inferences and resolve all factual ambiguities in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348 (1986); *Anderson*, 477 U.S. at 255. The court's role on summary judgment is not to weigh the evidence and the truth of the matter; its role is to determine whether there is a genuine issue of material fact for trial. *Anderson*, 477 U.S. at 249.

**III. <u>LEGAL ANALYSIS</u>:**

Cuker's first claim for relief alleges that WLG's $60,670.08 draw down on its retainer occurred after the petition date in violation of the automatic stay so the transfer is void. However, WLG contends it exercised recoupment rights respecting the trust fund draw down, so it was not a stay violation and/or that the automatic stay should be annuled retroactive to the petition date because WLG has a possessory lien on the trust funds under California law so the Court would have lifted the stay if a motion was filed, and the balance of equities favor annulment.

**A. <u>The Engagement Agreement Granted WLG Recoupment Rights Respecting the Trust Funds and WLG's Exercise of these Rights was not Inequitable in this Case so the Automatic Stay did not Apply.</u>**

*Recoupment* is a doctrine akin to setoff in that it allows the netting of claims that the parties have against each other. The Ninth Circuit has explained that recoupment is an equitable doctrine that "exempts a debt from the automatic stay when the debt is inextricably tied up with the [creditor's] claim." *In re TLC Hospitals, Inc.*, 224 F.3d 1008, 1011 (9th Cir. 2000). It explained that recoupment differs from setoff because recoupment may be employed to recover both prepetition and postpetition claims; however, the "limitation of recoupment [as opposed to setoff] … is that the claims or rights giving rise to the recoupment must arise from the same transaction or occurrence that gave rise to the liability sought to be enforce by the bankruptcy estate." *Id.* at 1011 (citations omitted). *In Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392 (1996), the Ninth Circuit explained:

> [R]ecoupment "is the setting up of a demand arising from the same transaction as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim …. Under recoupment, a defendant is able to meet a plaintiff's claim "with a countervailing claim that arose 'out of the same transaction.' "

*Newberry Corp.,* at 1399. What constitutes "the same transaction" is determined by the "logical relationship test," and the word "transaction" is given a flexible meaning. *Id.* at 1402. Importantly, recoupment also differs from setoff because the right of recoupment is *<u>not</u>* subject to the automatic stay. *Id.* at 1400 & n. 11*; see also TLC Hospitals*, 224 F.3d at 1011; *In re Madigan,* 270 B.R. 749, 754 (9th Cir. BAP 2010). The test is "whether the relevant rights being asserted against the debtor are logically connected to the debtor's countervailing obligations such that they may be fairly said to constitute part of the same transaction." *Id.* (citation omitted). Although the test is "flexible," the Ninth Circuit has cautioned that "courts should apply the recoupment doctrine in bankruptcy cases only when 'it would … be inequitable for the debtor to

enjoy the benefits of that transaction without meeting its obligations.'" *Id.* It reasoned that "care should be taken … in the bankruptcy context" because "improper application of the recoupment doctrine … could undermine" the fundamental federal bankruptcy policies of debtor protection and equitable distribution. *Id.* at 935 (citations omitted).

The Debtor argues that, as a matter of law, recoupment is not available to secured creditors because a condition to recoupment is that that "title" to the collateral must have already transferred to the creditor prior to the petition date. [ECF No. 81 (Opposition, Pg. 5-6)] The Debtor is incorrect. The Ninth Circuit has published many cases explaining the confusion between the related doctrines of recoupment and setoff, and how these doctrines work in a bankruptcy case. <u>None</u> of these cases discussed, let alone held, that recoupment is only available if "title" to the funds has already passed to the creditor prior to the petition date.

Rather, recoupment is an equitable doctrine – <u>in addition to possible lien rights</u> -- that permits the reduction (or netting) of countervailing claims <u>*arising from the same transaction*</u> (as opposed to different transactions) from a source of funds in which both of the claimants have a competing interest. The existence of dual-right is confirmed by *In re Winnet*, 97 B.R.7 (Bankr. E.D. Cal. 1989), in which the court recognized that an attorney can have both a retaining lien and equitable setoff rights to funds deposited into the client trust account. The firm won the funds as a statutory fee award when it prevailed in its client's litigation. *Winnet*, 97 B.R. at 9. Logically, the court did not address the firm's recoupment rights, if any, because the source of the funds implicated setoff as opposed to recoupment. The *Winnet* case does not mean (as Cuker suggests) that an attorney cannot have both a retaining lien and recoupment rights to client trust funds where (as here) the funds are deposited for express purpose of paying the attorney's fees/costs as they accrue.

Here, the logical relationship test for recoupment is easily met. Both the Debtor and WLG have countervailing claims to the trust funds arising from the Engagement Agreement, which is a single contract that governed their attorney/client relationship including <u>*how*</u> their countervailing claims would be paid. Specifically, the Engagement Agreement required Cuker to provide WLG with a (replenishable) $100,000 deposit of funds to be held <u>*in trust*</u> from which WLG would pay its fees/costs as they accrued; and it required WLG to return the unused portion of these trust funds to Cuker after payment in full of WLG's fees/cost at the conclusion of its services in the case. [See Ex. 1, ¶¶ 4-5, 10] The Court concludes that this payment arrangement constitutes recoupment, and it would be enforceable without hesitation but for this bankruptcy case.

### B. <u>The Balancing of the Equities Supports Retroactive Annulment of the Automatic Stay.</u>

Additionally, a balancing of the equities supports annulling the automatic stay retroactive to petition date to the extent the automatic stay applies. The Court agrees

with WLG's cited cases of *Fjeldsted v. Lien (In re Fjeldsted)*, 293 B.R. 12, 21 (9th Cir. BAP 2003) and *In re Khan*, 2019 WL 8012380, *4 (C.D. Cal. July 9, 2019), *aff'd* 854 Fed. Appx. 179 (2021), which concluded that the Ninth Circuit has abandoned the extreme circumstances test and a court should balances the equities. The parties agree that the balancing of the equities test is a multi-factor test that considers up to fourteen different factors, with no single factor being dispositive to grant retroactive stay relief. *In re Fjeldsted*, 293 B.R. 12, 21-25 (9th Cir. BAP 2003).

Here, many of these factors – especially those that weigh the parties' respective good faith and promptness -- are highly factual and not appropriate for a determination on summary judgment. If these factors are given the heaviest weight then the matter will need to be continued for an evidentiary hearing, which means more litigation. However, other factors – such as Factors 3, 8, 11, 12 -- can be summarily adjudicated. The Court has examined the various factors and concludes that factors 3, 8, 11, 12 ***heavily*** weigh in favor of retroactive annulment as the more equitable result in this case as follows:

Factor No. 3 - A weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive: This factor heavily favors annulment. The Court agrees that other creditors are utterly unaffected by retroactive annulment of the automatic stay to permit WLG to enforce its superior lien rights (and additionally this Court concludes that WLG has recoupment rights to these trust funds). In contrast, if retroactive annulment is denied, then WLG -- a creditor -- will be greatly prejudiced because it must return the funds to the trust account despite its superior lien rights and WLG will also face the Debtor's belated ***contingent*** claim objection which the Debtor only intends to assert if annulment is denied.

Factor No. 8 - The costs of annulment to the debtor and creditors: This factor heavily favors annulment. Annulment harms no creditors because WLG has a lien of the trust funds, and the plan is a full payment plan that does not hinge on return of these funds. While the Debtor has incurred costs to investigate the transfer date and to litigate this adversary proceeding, counsel for a debtor in possession is required to conduct due diligence and investigate transactions so some of these costs would have been incurred anyway. Further, the cost of this adversary proceeding was unnecessary. The matter could have been resolved by professional courtesy between the attorneys and/or the more streamlined noticed motion or claim objection procedures.

Factor No. 11 - Whether annulment of the stay will cause irreparable injury to the debtor: This factor heavily favors annulment. It is not irreparable injury for the Debtor to be required to pay for the services of its attorney from funds it gave to the attorney for precisely this purpose. The mere fact that the funds will not be returned to the bankruptcy estate is not irreparable injury.

Factor No. 12 - Whether stay relief will promote judicial economy or other efficiencies: This factor heavily favors annulment. Annulment will effectuate WLG's rights on the petition date and put an end to this dispute without the need for more

litigation. In contrast, denying annulment and voiding the transfer will trigger more litigation because of the Debtor's belated *contingent* claim objection to the *amount* of these prepetition fees/costs, which were billed and paid in December 2018 without objection. It is unclear why it took the Debtor until January 2021 to decide that WLG was professionally negligent in November 2018 and/or that WLG's December 2018 bill is excessive (and the Court does not agree that these contingent claim objections were adequately disclosed in the disclosure statement). Resolution of many of these belated *contingent* objections would require the delay of a trial in a full payment case that is otherwise essentially completed; whereas if the stay is annulled to reflect WLG's superior rights on the petition date, no trial will be necessary.

If Mr. Breslauer, counsel for Cuker, is prepared to accept this tentative ruling, he should notify the courtroom deputy and Mr. Curry and in that event, appearances will be excused on this matter and Mr. Curry shall prepare and lodge an order in accordance with this tentative ruling.

3) MOTION FOR PARTIAL DISCRETIONARY ABSTENTION FILED BY K. TODD CURRY ON BEHALF OF DEFENDANT/COUNTERCLAIMANT WOLFE LEGAL GROUP, PC.

WLG moves for partial discretionary abstention over the Second, Third and Fourth Claims in this adversary proceeding pursuant to 28 U.S.C. § 1334(c)(1) and FRBP 9014 on the ground that such abstention is warranted based on the interest of justice, and the interest of comity with the State courts or respect for State law. The motion is not well-taken, and it is ***DENIED***.

The motion to abstain is untimely. WLG primarily argues that the statute contains no express deadline to move for discretionary abstention, so "timeliness" does not matter. The Court disagrees. This adversary proceeding has been pending for almost 1.5 years. Substantial discovery and other litigation has occurred (*e.g.,* motion to quash, motion to strike/dismiss complaint, motion for leave to amend, motion by non-party witness for protective order); the discovery cutoff date has passed; and voluminous dispositive motions are filed and calendared for the same date and time as this motion to abstain. At this late-stage discretionary abstention in favor of the two state court actions that are in the initial stages must be denied because abstention would be a waste of judicial and party resources, and it would materially prejudice the Debtor, who is not a party in the state court actions but is expected to intervene and defend.

Further, WLG seems to think the Court can minimize the inefficiency and prejudice by simply ordering that its discretionary abstention is conditioned upon the state court treating all rulings, scheduling orders and discovery deadlines in this adversary proceeding as controlling in the state court actions so that the state court would merely

step in to try the action. The Court has no such jurisdiction to order the state court how to handle its case load, and such an order would offend "comity."

Second, the state court actions have a distinct factual focus. In the state court actions WLG's seeks to recover *postpetition* fees/costs *from the Debtor's principles, Adel Attala and A. Cuker*, which amounts this Court has already adjudicated the Debtor does not owe; whereas this adversary action involves an alleged violation of the automatic stay and disallowance of WLG's contingent and actually-filed proof of claim for its unpaid *prepetition* fees and costs *against the estate*. While the actions are factually related, there is simply no basis at this late-stage for this Court to defer its "core" claim objection jurisdiction in favor of the state court to decide basic issues of breach of contract and allowance of attorney's fees costs. These issues turn on state law but they are not unsettled, and this Court routinely decides similar issues as part of the claims allowance process in virtually every bankruptcy case

If counsel for WLG is prepared to accept the tentative ruling, he should notify counsel for the Debtor and appearances and argument on this motion will be excused. In that event, the Debtor shall prepare and lodge an order in accordance with this tentative ruling.

4) NOTICE OF PRE-TRIAL STATUS CONFERENCE (Fr. 2/3/22)